WILLIAM BRANDENBURG, Respondent, v. EDWARD KASPARIAN, Appellant, No. 42583—247 S. W. (2d) 806.

Division Two, April 14, 1952.

————————

*Baker & Reis* and *Ernest E. Baker* for appellant.

*Crowdus & Buder, William W. Crowdus* and *William E. Buder* for respondent.

 WESTHUES, C.—On the evening of August 27, 1949, at about eleven o'clock, plaintiff Brandenburg while crossing Lindell Boulevard in the thirty-eight hundred block in the City of St. Louis, Missouri, was struck by a car driven by the defendant Kasparian and was injured. Plaintiff filed this suit to recover $25,000 as damages for his injuries. A trial resulted in a verdict for the defendant. A new trial was granted on the ground that the court erred in giving instruction No. 5. The defendant appealed.

 The case was submitted to a jury on both primary and humanitarian negligence. The transcript shows that the instruction submitting primary negligence was marked "Instruction No. 1 (Also I.)." The one submitting humanitarian negligence was marked "Instruction No. 4 (Also II.)." An instruction was given at defendant's request submitting contributory negligence as a defense. This was marked "Instruction No. 2." Instruction 5 given at defendant's request read as follows:

"The Court instructs the Jury that if you find and believe from the evidence that on the occasion in question plaintiff was walking from the north side towards the south side of Lindell Boulevard at the place mentioned in evidence, and that defendant was driving an automobile west on Lindell Boulevard approaching the place plaintiff was crossing, and that by the exercise of ordinary care plaintiff could have discovered defendant's automobile so approaching, and if you further find and believe from the evidence that plaintiff failed to discover the presence and approach of defendant's automobile before walking into the path of same, and that such failure, if any, [808] was negligent, and that such negligence, if any, was the sole, direct and proximate cause of plaintiff's colliding with said automobile, and that defendant was not guilty of the acts of negligence submitted to you in instruction numbered two, then your verdict should be in favor of defendant and against plaintiff."

The trial court did not indicate wherein instruction 5 was deemed to be erroneous. Plaintiff in his motion for new trial assigned error claiming that the numbering of the instructions and the reference in instruction 5 to instruction 2 was confusing and that instruction 5 was "improper, erroneous, misleading, illegal and prejudicial."

Defendant says that plaintiff was partially responsible for the confusion in numbering the instructions and, therefore, is in no position to complain. In the brief defendant says plaintiff numbered his instructions "in bold type, with Roman numerals, at the top of the instruction", and that "The Court inadvertently overlooked this fact and did not give those instructions in the order plaintiff numbered them." The instructions were evidently renumbered by the court. The word "Also" probably did not appear on the instructions. The trial court may have been of the opinion that it was not plaintiff's

fault that the instructions carried two separate numbers and also that such numbering confused the jury. The case of Morgan v. Kroger Grocery & Baking Co., 348 Mo. 542, 154 S. W. (2d) 44, l.c. 52 (15-17), cited by the defendant is not in point. A trial court has wide discretion in granting or refusing a new trial. 66 C.J.S. 484, Sec. 201. Berger v. Podolsky Bros., 360 Mo. 239, 227 S. W. (2d) 695, l.c. 698 (4). If the trial court granted a new trial on the ground that in his opinion instruction 5 was misleading because it referred the jury to instruction 2, when, in fact, there were two instructions so numbered, then the action of the trial court must be sustained.

There is, however, another theory on which the action of the trial court may be sustained. This requires a brief statement of what the evidence disclosed. Lindell Boulevard is an east and west street. At a point about 700 feet east of Vandeventer, a north and south street, Lindell Boulevard begins to widen and a street referred to as North Lindell branches off in a slight northwesterly direction. A triangular piece of ground beginning at a point 200 feet east of Vandeventer and extending west to Vandeventer separates Lindell Boulevard from North Lindell. Lindell, at this point, is 60 feet wide; North Lindell is 50 feet in width. This triangular plot is a small park with sidewalks along its outer edges. Plaintiff, at about 11:00 p.m., on August 27, 1949, was walking west on the north side of Lindell Boulevard. When he reached a point directly north of the eastern end of the triangular plot, he attempted to cross North Lindell Boulevard. He testified he stopped at the curb, looked east and west, and saw no cars on North Lindell; he then walked south out into the street and when he had reached a point about 20 feet out into the street, he heard a screeching of brakes and then saw a car bearing down on him from the east; that the car struck him, knocking him to the street. Plaintiff sustained a broken hip and other injuries. Plaintiff's testimony was that he did not look to the east or to the west after he started to cross the street.

There were several eyewitnesses to the accident. One witness testified that there were a number of cars going west on Lindell Boulevard; that he noticed the defendant's car leave the traffic on Lindell and branch off on North Lindell; that defendant's car was traveling about 30 miles per hour; that no horn was sounded and the car did not swerve to the north or south before it struck plaintiff.

The defendant testified that he was driving west on North Lindell and did not see plaintiff until after his car came into contact with plaintiff. Note a portion of his evidence:

"Q. Just where was he with reference to the front part of the automobile when you first saw him?

"A. About the center.

"Q. Center?

"A. Yes.

"Q. At no time, though, did you see him prior to the time he was in the [809] center of your car, is that correct?

"A. No, sir.

"Q. Did you apply your brakes at any time?

"A. Yes, sir, when I heard people holler 'Look out!'

"Q. What people?

"A. People on the street right in front of Moolah Temple.

"Q. Then you put on your brakes?

"A. When they hollered 'Look out!' I didn't know what it was.

"Q. Did you see Mr. Brandenburg when they hollered 'Look out!'?

"A. No, sir.

"Q. You still didn't see him?

"A. No, sir. I just stepped on my brake.

"Q. At what speed were you traveling at that time?

"A. Twenty miles an hour."

The defendant further testified that he could stop his car within seven to eight feet when driving 20 miles per hour and within "about ten to fifteen feet" if traveling 35 miles per hour. A number of eye-witnesses testified that plaintiff was about 20 feet out in the street when defendant's car struck him. One witness stated he saw both the plaintiff and the defendant's car and watched them because he realized plaintiff would be struck.

In view of the evidence we are of the opinion that instruction 5 was erroneous. Unless there were circumstances not shown by this record, the defendant was negligent in not discovering plaintiff who must have been in plain view in time for the defendant to have stopped, sounded a warning or swerved his car. The instruction 5 requires no finding of facts which would excuse the defendant in not seeing plaintiff. For that reason instruction 5 should not have been given. Defendant urges that the evidence was insufficient to justify a submission of the case under the humanitarian doctrine. We rule the evidence was sufficient and the case of Claridge v. Anzolone, 359 Mo. 65, 220 S.W.(2d) 33, cited by defendant supports plaintiff's case. The defendant urges that plaintiff was guilty of negligence as a matter of law. We need not rule this point on this appeal. There was ample evidence for a submission of the case under the humanitarian doctrine and since instruction 5 was erroneous, plaintiff was entitled to a new trial.

Defendant says that the trial court erred "in permitting plaintiff to reopen the case and amend his petition so as to plead humanitarian negligence." The defendant expressed surprise, stated he was not prepared to defend on humanitarian negligence, and asked the court to discharge the jury and to continue the case. The record shows that at the close of all of the evidence, plaintiff asked to amend his petition by interlineation by inserting the word "imminent"

26

before the word "peril." Permitting such an amendment was within the discretion of the trial court. Sec. 509.500, RSMo 1949. The record does not justify a finding that the trial court should have continued the case.

The order granting a new trial is hereby affirmed and the cause remanded. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.